UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

KENNETH LOCKE,                                )        Case No. EDCV 09-1638-JEM
                                              )
                        Plaintiff,            )
                                              )        MEMORANDUM OPINION AND ORDER
        v.                                    )        REVERSING DECISION OF THE
                                              )        COMMISSIONER OF SOCIAL SECURITY
MICHAEL J. ASTRUE,                            )        AND REMANDING FOR FURTHER
Commissioner of Social Security,              )        PROCEEDINGS
                                              )
                        Defendant.            )
————————————————————————————                 )

**PROCEEDINGS**

        On September 10, 2009, Kenneth Locke ("Plaintiff" or "Claimant") filed a complaint

seeking review of the decision by the Commissioner of Social Security ("Commissioner")

denying Plaintiff's application for Supplemental Security Income ("SSI") benefits.  The

Commissioner filed an Answer on March 9, 2010.  On May 10, 2010, the parties filed a Joint

Stipulation ("JS").  The matter is now ready for decision.

        Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before the

Magistrate Judge.  After reviewing the pleadings, transcripts, and administrative record

("AR"), the Court concludes that the Commissioner's decision should be reversed and

remanded for further proceedings in accordance with law and with this Memorandum

Opinion and Order.

**BACKGROUND**

Plaintiff is a 53 year old male who was found to have the medically determinable severe impairments of anxiety disorder, hepatitis C, diabetes mellitus, and degenerative disc disease.  (AR 10.)  Plaintiff has not engaged in substantial gainful activity since June 25, 2007, the application date.  (AR 10.)

Plaintiff's claim for SSI benefits was denied initially on September 21, 2007, and on reconsideration on January 25, 2008.  (AR 8.)  Plaintiff filed a written request for hearing, which was held before Administrative Law Judge ("ALJ") Joseph D. Schloss on March 26, 2009, in San Bernardino, California.  (AR 8.)  Claimant appeared and testified.  (AR 8.)  Medical expert William L. Debolt, M.D., and vocational expert Sandra M. Fioretti also appeared and testified.  (AR 8.)

The ALJ issued an unfavorable decision on June 8, 2009.  (AR 8-14.)  The ALJ determined that the Plaintiff had the residual functional capacity ("RFC")[1] to perform medium exertion work, except that he should avoid unprotected heights and dangerous machinery.  (AR 11.)  Plaintiff had no prior relevant work (AR 13), but the vocational expert testified that Plaintiff could perform certain jobs in the national economy, such as industrial cleaner, hand packager, and kitchen helper.  (AR 14.)

The ALJ concluded that Claimant was not under a disability within the meaning of the Social Security Act.  (AR 14.)  The Appeals Council denied review on August 6, 2009.  (AR 1-3.)

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues that Plaintiff raises as grounds for reversal are as follows:

1. Whether the ALJ posed a complete hypothetical question to the vocational expert.

---

[1]  Residual functional capacity is what one "can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

2.  Whether the ALJ properly held that Plaintiff could perform the jobs of industrial cleaner, hand packager, and kitchen helper.

3.  Whether the ALJ properly considered the treating psychiatrist's opinion.

4.  Whether the ALJ properly considered Plaintiff's testimony and made proper credibility findings.

Embedded in some of these issues is the contention that the ALJ failed to develop the record adequately.

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied.  DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "'more than a mere scintilla'. . . but less than a preponderance." Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson, 402 U.S. at 401 (internal quotations and citation omitted).

This Court must review the record as a whole and consider adverse as well as supporting evidence.  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld.  Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999).  "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'"  Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

### SEQUENTIAL EVALUATION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of

not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Commissioner

has established a five-step sequential process to determine whether a claimant is disabled.

20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in

substantially gainful activity.  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  If the

claimant is engaging in substantially gainful activity, disability benefits will be denied.  Bowen

v. Yuckert, 482 U.S. 137, 140 (1987).  Second, the ALJ must determine whether the claimant

has a severe impairment or combination of impairments.  Parra, 481 F.3d at 746.  Third, the

ALJ must determine whether the impairment is listed, or equivalent to an impairment listed,

in Appendix I of the regulations.  Id.  If the impediment meets or equals one of the listed

impairments, the claimant is presumptively disabled.  Bowen, 482 U.S. at 141.  Fourth, the

ALJ must determine whether the impairment prevents the claimant from doing past relevant

work.  Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001).  Before making the step four

determination, the ALJ first must determine the claimant's residual functional capacity .  20

C.F.R. § 416.920(e).  The RFC must consider all of the claimant's impairments, including

those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling

("SSR") 96-8p.  If the claimant cannot perform his or her past relevant work or has no past

relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment

prevents the claimant from performing any other substantial gainful activity.  Moore v. Apfel,

216 F.3d 864, 869 (9th Cir. 2000).

The claimant bears the burden of proving steps one through four, consistent with the

general rule that at all times the burden is on the claimant to establish his or her entitlement

to benefits.  Parra, 481 F.3d at 746.  Once this prima facie case is established by the

claimant, the burden shifts to the Commissioner to show that the claimant may perform other

gainful activity.  Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).  To support a

finding that a claimant is not disabled at step five, the Commissioner must provide evidence

demonstrating that other work exists in significant numbers in the national economy that the

claimant an do, given the RFC, age, education, and work experience.  20 C.F.R. § 416.912(g).  If the Commissioner cannot meet this burden, then the claimant is disabled and entitled to benefits.  Id.

## DISCUSSION

The Commissioner's decision denying benefits must be reversed.  The ALJ did not develop the record sufficiently regarding the impact of his assessed machinery limitation on Claimant's ability to perform the jobs specified by the vocational expert, the impact of Plaintiff's mental impairments on his RFC, and the impact of Claimant's combined mental and physical impairments, severe and nonsevere, on his ability to work.

### A.     Medical And Procedural Background

Plaintiff asserted bipolar disorder, depression, schizophrenia, hallucinations, seizures, mental disorders, diabetes, disorders of the back, hepatitis, anxiety disorders, and substance addiction disorders.  (AR 20-21, 23, 111, 124, 147, 148, 172, 193-94, 242, 335.)  He also has been treated for colon cancer.  (AR 196.)

As a child, Plaintiff was in special education for ADHD and received Ritalin.  (AR 18, 23, 217, 237, 338.)  As an adult, he was convicted of amphetamine use and manufacturing and was in prison for several years.  (AR 11, 13, 19, 23.)  Despite a history of substance addiction, he testified at the hearing that he had been clean for 10 years and came off parole 13 months before the hearing.  (AR 11, 12, 19.)

The consulting physician Dr. Debolt testified that Plaintiff has a history of degenerative disc disease, including disc herniation.  (AR 31, 193-94, 196, 256.)  The ALJ determined that Claimant's diabetes was controlled (AR 10), although the record evidence is unclear on that point.  (AR 242.)  Claimant had uncompleted interferon therapy for hepatitis.  (AR 242, 291.)

Prison and parole psychiatric and social worker evaluations indicate severe and persistent mental illness and an extensive history of major psychiatric disorder, including chronic paranoid schizophrenia, depression, anxiety disorder, and schizoaffective disorder. (AR 124, 200-19, 264-78, 338-340, 362-69.)  The prison doctor, Dr. Gordon, saw Claimant

1  monthly for two years and in 2007 diagnosed anxiety disorder and social phobia and opined
2  that Claimant would be "very impaired" in a work situation.[2]  (AR 200-05, 235, 306.)  Dr. In
3  Gyu Kim diagnosed schizoaffective disorder in 2001.  (AR 339.)  A recent assessment by Dr.
4  Seehrai diagnosed mood, panic, and psychotic disorders.  (AR 368.)  Plaintiff also provided a
5  medical opinion from a doctor whose name is illegible, diagnosing chronic paranoid
6  schizophrenia and stating essentially that Plaintiff is unable to work because of psychological
7  difficulties.  (AR 355-60.)  There were suicide attempts (AR 23, 205, 338) and a psychiatric
8  hospitalization at Patton.  (AR 213, 237, 388.)  The ALJ nonetheless found Plaintiff's claimed
9  mental illnesses lacking in credibility (AR 12-13), largely on the basis of a psychiatric
10 evaluation by consulting examiner Dr. Linda Smith.  (AR 306-16.)  The ALJ did conclude that
11 Plaintiff had the severe impairment of anxiety disorder.  (AR 10.)

12        Claimant takes numerous medications on a daily basis.  These include busparone,
13 gabapentin, geodon, prozac, trazodone, clonazepam, and fluoxetine for mental illnesses (AR
14 20, 114, 149, 156, 205), actos and glyburide for diabetes (AR 27, 149, 167), and enalapril for
15 high blood pressure.  (AR 149.)

16        The ALJ determined that Claimant could perform medium work with some limitations,
17 including not working around dangerous machinery.  (AR 11.)  The ALJ also concluded that
18 Plaintiff's severe mental impairment of anxiety disorder did not meet or equal a listing and
19 apparently did not believe that Plaintiff's anxiety disorder and other mental illnesses, severe
20 or nonsevere, would result in any limitations on his ability to work, although he made no
21 express finding to that effect.

22        The ALJ found that Plaintiff had no prior work.  (AR 13.)  The vocational expert
23 Sandra Leonetti, however, testified that Plaintiff could perform other jobs in the national
24 economy such as industrial cleaner, hand packager, and kitchen helper.  (AR 35-36.)  When

25

26        [2]  The ALJ states that the Claimant has not seen Dr. Gordon (AR 13), based on a
27 state reviewing physician's comment.  (AR 328.)  Dr. Gordon and another state reviewing
   physician, however, state that Claimant was "[s]een monthly from 06/2005-06/2007 by
28 Dr. Gordon."  (AR 203, 325.)

Plaintiff's counsel asked the vocational expert to assume that Plaintiff would be off task 20 percent of the time, the ALJ stipulated that he would not be employable. (AR 36.)

**B.    Applicable Law Regarding The ALJ's Duty To
Develop The Record**

In Social Security cases, the ALJ has a special, independent duty to develop the record fully and fairly and to assure that the claimant's interests are considered. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001); Smolen, 80 F.3d 1273, 1288 (9th Cir. 1996). Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). The ALJ has a basic duty to inform himself about facts relevant to his decision. Heckler v. Campbell, 461 U.S. 458, 471 n.1 (1983) (Brennan, J., concurring). The ALJ's duty to develop the record exists even when the claimant is represented by counsel. Tonapetyan, 242 F.3d 1150.

Ambiguous evidence or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence triggers the ALJ's duty to conduct an appropriate inquiry. Smolen, 80 F.3d at 1288; Tonapetyan, 242 F.3d at 1150. The ALJ may discharge this duty by subpoenaing the claimant's physicians, submitting questions to them, continuing the hearing or keeping the record open after the hearing to allow supplementation of the record. Smolen, 80 F.3d at 1288; Tonapetyan, 242 F.3d at 1150.

**C.    The ALJ Failed To Develop The Record Sufficiently
On Whether Plaintiff Can Perform Other Jobs
In The National Economy**

The ALJ decision focuses primarily on Claimant's alleged mental illnesses. There is very little attention given to his physical impairments in the decision.

The ALJ failed to develop the record adequately regarding the machinery limitation specified. The ALJ asked the vocational expert what type of jobs there would be for an individual like Claimant, assuming a full range of medium work with the exception that he "should not work around heights, unprotected heights or machinery." (AR 34.) The vocational expert identified three jobs Plaintiff could perform with his limitations: industrial cleaner, hand packager, and kitchen helper. (AR 14.) The ALJ without explanation adopted an RFC of medium work for Plaintiff except he should "avoid working at unprotected heights

1  or around dangerous machinery." (AR 11.)  The machinery restriction was based on

2  Claimant's claimed seizure history,[3] not on his claimed mental illnesses.  (AR 34.)

3      Plaintiff complains that the ALJ failed to mention "dangerous" machinery in his

4  hypothetical to the vocational expert.  The Commissioner claims that this oversight caused

5  no prejudice because the word "machinery," meaning all machinery, would include

6  dangerous machines.

7      The "any machinery" limitation, however, proves too much.  Plaintiff asserts that the

8  three jobs identified by the vocational expert all require exposure to machinery, even

9  dangerous machinery, and thus are inconsistent with Plaintiff's limitations.  The

10 Commissioner argues that none of these jobs involve dangerous machinery as defined in the

11 Dictionary of Occupational Titles ("DOT"), but never addresses the "any machinery" limitation

12 that he says was presented to the vocational expert.  Other than responding to the

13 hypothetical posed by the ALJ, the vocational expert did not discuss the machinery utilized in

14 the three job classifications, nor did the ALJ in his decision.  This Court cannot base its ruling

15 on considerations not addressed in the ALJ decision.  Connett v. Barnhart, 340 F.3d 871,

16 874 (9th Cir. 2003).  This is a matter that should have been addressed with the vocational

17 expert at hearing and by the ALJ in his decision.

18      Additionally, the question posed to the vocational expert was ambiguous.  The ALJ

19 specified a restriction that Plaintiff should "avoid working around heights, unprotected heights

20 or machinery." (AR 34.)  The Commissioner interpreted the ALJ's reference to machinery to

21 mean any machinery but the ALJ may have meant unprotected machinery.  Indeed, the ALJ

22 even used those terms elsewhere in his decision: "He can avoid working at heights or around

23 unprotected machinery." (AR 12.)  There is no indication how the vocational expert

24 interpreted the ALJ's question and no record regarding whether the three jobs identified by

25

26    [3]  The ALJ found that there was no objective medical evidence supporting a seizure
   disorder (AR 12, 31), but prison medical records indicate a history of diabetic seizures (AR

27 124, 148, 172, 238, 335) and Claimant continues to take seizure medication.  (AR 254.)
   There is no need to resolve this inconsistency because the ALJ imposed a height and

28 machinery limitation based on the reported seizure history.  (AR 34.)

the vocational expert would involve exposure to unprotected machinery, whether dangerous or not.  The ALJ decision does not address this issue nor does the Joint Stipulation.  The record is ambiguous and requires further development to determine whether Plaintiff can perform the jobs specified by the vocational expert.  The Commissioner, of course, bears the burden of proof on this step five determination in the sequential process.

### D.    The ALJ Failed To Develop The Record Sufficiently Regarding The Impact Of Claimant's Mental Impairments On His RFC

The ALJ determined that Claimant suffers from the severe mental impairment of anxiety disorder.  The ALJ, however, failed to address or make any findings about the impact of Claimant's mental impairment on his ability to work nor specified or discussed any limitations or restrictions that should be imposed as result of that impairment.  The ALJ did not develop the record sufficiently on the impact of Plaintiff's mental impairment on his RFC.

Psychiatric impairments are not as amenable to substantiation by objective laboratory testing as are physical impairments.  Hartman v. Bowen, 636 F. Supp. 129, 131-32 (N. D. Cal. 1986).  In the case of mental illness, clinical and laboratory data may consist of "the diagnoses and observations of professional psychiatrists and psychologists."  Id. at 132.  Here, prison medical records over many years indicate that Claimant suffers from severe mental illness.  The diagnoses were made by numerous psychiatrists, psychologists, and social workers.  (AR 13.)  Those professionals and an unnamed treating physician outside prison (AR 355-60) found Plaintiff incapable of or "very impaired" (AR 203) for work.

The ALJ, however, rejected these clinical assessments of Claimant's alleged mental illnesses as well as Claimant's credibility, concluding that there was no evidence Plaintiff cannot be around people.  (AR 12.)  The ALJ rested his conclusion on two prior felony convictions based on moral turpitude (AR 12) and on the psychiatric evaluation performed by Dr. Linda Smith.  (AR 306-16.)  The felony convictions obviously do not mean Plaintiff is completely mentally unimpaired.  Dr. Smith found Claimant to be manipulative, evasive, and feigning history of severe problems.  She found no evidence of paranoia, psychosis, schizophrenia, or bipolar disorder, only antisocial traits.  (AR 12-13.)  Dr. Smith, however,

does not appear to have reviewed the extensive prison medical records. The Commissioner contends that Dr. Debolt's testimony also undermines the unnamed treating physician's report but there is no indication that Dr. Debolt is a psychiatrist or that he examined Claimant, and he does not address the prison records. More importantly, the ALJ did not even mention, much less rely, on Dr. Debolt in connection with his evaluation of Claimant's alleged mental impairments and his opinion thus cannot be considered here. Connett, 340 F.3d at 874. The Commissioner cites the opinion of state agency reviewing physician Dr. Kevin Gregg that Plaintiff did not have severe mental impairments (AR 328-29), but there is no indication that Dr. Gregg is a psychiatrist and he essentially embraces Dr. Smith's assessment. Again, the ALJ did not mention Dr. Gregg or rely on his opinion except for the diagnosis of anxiety disorder. (AR 13.) The ALJ's decision to disregard most of Claimant's mental illnesses and assign no limitations in his RFC rests heavily on Dr. Smith's evaluation.

The ALJ dismisses Plaintiff's treating physician in a conclusory fashion with nothing more than the statement: "Little weight is given to the opinion of the unknown physician." There is no discussion or facts or reasons given. Presumably, his rejection of the treating physician's opinion is based on Dr. Smith's report. The Commissioner questions whether the treating physician is acceptable medical evidence, but the ALJ never made that argument which cannot be considered here. Connett, 340 F.3d at 874. The Commissioner also attempts to dismiss the treating physician's opinion as a last minute check the box evaluation by a physician whose name is illegible, but again this was not an argument advanced by the ALJ and thus cannot be considered here. Id. The physician, moreover, did offer some analysis of Claimant's mental impairments.

More importantly, the treating physician's opinion is grounded in the prison and parole outpatient medical records, unlike the evaluation by Dr. Smith. The ALJ does not discuss the prison records in his decision. The ALJ does not mention the opinions of Dr. Kim or Dr. Seehrai. The ALJ describes Dr. Gordon's opinion but dismisses it for lack of notes, although the prison records contain extensive notes and Dr. Gordon saw Claimant monthly for two years. (AR 203, 235.) The ALJ acknowledges but never addresses the social

1    worker's letter indicating severe mental illness and asserting an inability to work, even though

2    the social worker's comments are important lay testimony.  The Commissioner's assertion

3    that the treating physician's opinion is inconsistent with the other medical evidence is untrue.

4    Again, the ALJ did not make this finding in his decision.  Id.

5           Nonetheless, Dr. Smith's opinion certainly is substantial evidence that provides the

6    ALJ with a "specific, clear and convincing reason" for rejecting Claimant's credibility on all

7    claimed mental illnesses other than anxiety disorder.  Reddick v. Chater, 157 F.3d 715, 722

8    (9th Cir. 1998); Smolen, 80 F.3d at 1283-84.  Her opinion also provides the ALJ with "specific

9    legitimate reasons" based on substantial evidence for rejecting the unnamed treating

10   physician's opinion for any diagnosis beyond anxiety disorder.  Bray v. Comm'r, 554 F.3d

11   1219, 1228 (9th Cir. 2009); Thomas v. Barnhart, 278 F.3d 949, 956-57 (9th Cir. 2002).  So

12   does the opinion of the prison doctor Dr. Gordon, who limited his diagnosis to anxiety

13   disorder and social phobia.  (AR 203.)  Dr. Gregg also diagnosed anxiety disorder.  (AR 13.)

14          The Court, however, has some doubt about the reach of Dr. Smith's once in time

15   psychiatric evaluation without benefit of prison medical records that limits Claimant's mental

16   impairment to antisocial traits.  This assessment seems extreme and conflicts with so much

17   other evidence.  The prison records indicate that Claimant has severe mental illness.

18   Numerous treating physicians have determined that Plaintiff at least has anxiety disorder.

19   Plaintiff is also receiving multiple daily medications for mental illness and has been for years.

20   Even the ALJ did not go so far as Dr. Smith, characterizing Claimant's mental impairments

21   as an "anxiety disorder," the diagnosis of the prison doctor and Dr. Gregg, rather than merely

22   antisocial traits diagnosed by Dr. Smith.  There is substantial evidence to support the ALJ's

23   assessment of Plaintiff's mental illnesses as limited to an anxiety disorder.

24          Thus, it may well be true that Plaintiff's credibility is severely in doubt as to mental

25   illnesses other than anxiety disorder.  The ALJ, however, did recognize that Claimant had the

26   severe mental impairment of anxiety disorder, notwithstanding Dr. Smith's evaluation and

27   any issues of credibility.  Fatally, the ALJ never addressed the impact of Claimant's anxiety

28   disorder on his ability to work in determining his RFC other than the assertion there was no

1  evidence Plaintiff was unable to be around people.  The ALJ specified no limitations due to
2  Claimant's anxiety disorder nor made any findings that Claimant's mental impairment
3  imposed no restrictions.  The ALJ imposed the machinery limitation because of Claimant's
4  claimed seizure history, not because of his anxiety disorder.  Yet, on this record, there
5  certainly is evidence to suggest that Claimant's anxiety disorder could cause him to be "off
6  task" to some degree.

7       The ALJ's conclusion that there is no evidence Claimant is unable to work around
8  people is simply untrue and unsupported by substantial evidence, and insufficient in any
9  event to address the impact of Claimant's anxiety disorder on his ability to work.  Dr. Gordon
10 diagnosed Claimant with anxiety disorder and social phobia and indicated he would be "very
11 impaired" in work situations (AR 203), and even Dr. Smith diagnosed him with antisocial
12 personality traits.

13      Additionally, most of the medical professionals diagnosed Claimant with at least
14 anxiety disorder, a mental disorder accepted by the ALJ.  An anxiety disorder could result in
15 being "off task" and other manifestations that interfere with his ability to work besides not
16 being able to be around people.  The ALJ, however, never considers or discusses that
17 possibility or develops the record on that issue.  This was error.

18      The ALJ must develop the record further on what impact Claimant's anxiety disorder
19 and workplace impairments (i.e. social phobia and antisocial personality traits) have on his
20 RFC and ability to work, particularly in the jobs specified by the vocational expert.

21      **E.     The ALJ Failed To Consider The Combined Impact
               Of Plaintiff's Impairments**
22

23      A claimant's illnesses "must be considered in combination and must not be
24 fragmentized in evaluating their effects."  Beecher v. Heckler, 756 F.2d 693, 694-95 (9th Cir.
    1985).  The ALJ must consider the combined effect of all of a claimant's impairments on his
25 or her ability to function "without regard to whether each alone was sufficiently severe."
26 Smolen, 80 F.3d at 1290.  The ALJ failed to develop the record on the combined impact of all
27 of Claimant's physical and mental impairments, severe and nonsevere, on his RFC.
28

1      On remand, the ALJ must develop the record more fully on the machinery limitations

2 of the jobs identified by the vocational expert and on the extent to which Claimant's anxiety

3 disorder, in combination with his physical limitations, affect his RFC and his ability to perform

4 the jobs identified by the vocational expert.

5                                                  **ORDER**

6      IT IS HEREBY ORDERED that the Decision of the Commissioner of Social Security is

7 reversed and remanded for further proceedings in accordance with law and with this

8 Memorandum Opinion and Order.

9      LET JUDGMENT BE ENTERED ACCORDINGLY.

10

11 DATED: <u>November 12, 2010</u>             <u>      */s/ John E. McDermott*      </u>

12                                          JOHN E. MCDERMOTT
                             UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28